# EXHIBIT A

David Fernandes (SBN 280944)
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Tel.: (214) 521-3605
Fax: (214) 279-9915
Email: dfernandes@baronbudd.com

*Counsel for Plaintiffs*

**Electronically FILED by**
**Superior Court of California,**
**County of Los Angeles**
**6/17/2025 4:05 PM**
**David W. Slayton,**
**Executive Officer/Clerk of Court,**
**By J. Nunez, Deputy Clerk**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

EDWARD LOVING, DAWN KAHRS, MATTHEW KAISER, MICHAEL KNIGHT, ELI LANDAU, RONNIE LEWIS, SCOTT LINDQUIST, JIMMIE LITTRELL JR., JESSIE LOPEZ, OSCAR LUNA, CLARK LUNDE, ANTHONY LUU, STACEY LYSTER, STEVEN MARTINEZ, CHARLES MAXWELL, ERIK MCCORNACK, JOHN MCELHENY, JEFFREY MCENTIRE, TROY MCINTYRE, PATRICK MCKENNA, MICHAEL MCLEOD, JOSE MERCADO, SANDRA MEZA, STEPHAN MINTZ, HENRY MONREAL, BENJAMIN MONTOYA, JEFFREY MOORE, MARIO MORELLI, JULIE MORENO, PATRICIA MUNIVE, GLENN MYATT, RAYMOND NAZARIAN, DAVID NIDETZ, DAN OLSON, LYDIA ORTEGA, ROGER PAHL, KRISIE PANAGIOTOU, RONALD PAPES, EMILY PEREZ, LESLIE PETERSON, JORGE PISCO, BRIAN POLLARD, LATASHA RAMOS, JESUS RAMOS, CYNTHIA RAWLS HARWOOD, SHERI REESE, WILLIAM RODRIGUEZ, HECTOR RODRIGUEZ, GREGG ROGENSTEIN, CHRISTOPHER ROHAN, ULISES ROJAS ZAMUDIO, MOHAMED SABRA, YOLANDA SANCHEZ, CARLON SCOTT, JOSUE SILVA, DONALD SIMONDS, GORDON SIMPSON, DEBRA SMITH, CHRISTOPHER SMITH, JAMES SPOHN, WALTER STEWART, STEPHEN STOWELL, BERKAY SURMELI, CHARLES TALIAFERRO, JR., JAMES TURNER, JESSE VASQUEZ, IV, JAY TIPPLE, JR., ALAN BARNETT, SHON

CASE NO. 25STCV17610

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

(1) Strict Liability Design Defect- Consumer Expectation Test
(2) Strict Liability Design Defect- Risk Benefit Test
(3) Strict Liability Failure to Warn
(4) Negligence- Duty to Warn
(5) Negligence- Failure to Recall
(6) Violation of the Uniform Voidable Transfer Act
(7) Civil Conspiracy

HUETH, PEDRO HERNANDEZ, RHONDA WILSON, KEVIN ENGLUND, MATTHEW BISHOP, BRENDA HONEYCUTT, JEREMY PARKER, NYKKOLE SCHILLACI, MARY GUERENABARRENA, MARY SMITH, RICHARD SUTTON, BOZENA TESLA, VALENTINE VARGAS, THOMAS BRITTON, CHRISTOPHER COSCIA, CHRISTOPHER LAIRD, THOMAS MARTINEZ, III, JOSHUA POETOEHENA, JASON PRATHER, DAVID SEATON, II, PHILLIP WHELAN, RONALD DODGE, JR.,  AND SHAWN WARNER,

Plaintiffs,

vs.

3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.); AGC CHEMICAL AMERICAS, INC.; AGC, INC. (f/k/a Asahi Glass Co., Ltd.);  ARCHROMA U.S., INC.; ARKEMA, INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT CO.; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; TYCO FIRE PRODUCTS, LP, AND JOHN DOE DEFENDANTS 1-49,

Defendants.

COME NOW Plaintiffs, Edward Loving, Dawn Kahrs, Matthew Kaiser, Michael Knight, Eli Landau, Ronnie Lewis, Scott Lindquist, Jimmie Littrell, Jr., Jessie Lopez, Oscar Luna, Clark Lunde, Anthony Luu, Stacey Lyster, Steven Martinez, Charles Maxwell, Erik McCornack, John McElheny, Jeffrey McEntire, Troy McIntyre, Patrick Mckenna, Michael McLeod, Jose Mercado, Sandra Meza, Stephan Mintz, Henry Monreal, Benjamin Montoya, Jeffrey Moore, Mario Morelli, Julie Moreno, Patricia Munive, Glenn Myatt, Raymond Nazarian, David Nidetz, Dan Olson, Lydia Ortega, Roger Pahl, Krisie Panagiotou, Ronald Papes, Emily Perez, Leslie Peterson, Jorge Pisco,

Brian Pollard, Latasha Ramos, Jesus Ramos, Cynthia Rawls Harwood, Sheri Reese, William Rodriguez, Hector Rodriguez, Gregg Rogenstein, Christopher Rohan, Ulises Rojas Zamudio, Mohamed Sabra, Yolanda Sanchez, Carlon Scott, Josue Silva, Donald Simonds, Gordon Simpson, Debra Smith, Christopher Smith, James Spohn, Walter Stewart, Stephen Stowell, Berkay Surmeli, Charles Taliaffero, Jr., James Turner, Jesse Vasquez, IV, Jay Tipple, Jr., Alan Barnett, Shon Hueth, Pedro Hernandez, Rhonda Wilson, Kevin Englund, Matthew Bishop, Brenda Honeycutt, Jeremy Parker, Nykkole Schillaci, Mary Guerenabarrena, Mary Smith, Richard Sutton, Bozena Tesla, Valentine Vargas, Thomas Britton, Christopher Coscia, Christopher Laird, Thomas Martinez, III, Joshua Poetoehena, Jason Prather, David Seaton, II, Phillip Whelan, Ronald Dodge, Jr., and Shawn Warner, by and through undersigned counsel, and bring this action against Defendants 3M Company (f/k/a Minnesota Mining and Manufacturing, Co.), AGC Chemical Americas, Inc., AGC, Inc. (f/k/a Asahi Glass Co., Ltd.), Archroma U.S., Inc., Arkema Inc., BASF Corporation, Buckeye Fire Equipment Company, Chemdesign Products, Inc., Chemguard, Inc., Clariant Corporation, Corteva, Inc., DuPont De Nemours, Inc., Dynax Corporation, E. I. Du Pont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Tyco Fire Products, LP (individually and as successor-in-interest to The Ansul Company), and John Doe Defendants 1-49. Plaintiffs hereby allege, upon information and belief, as follows:

## I.    SUMMARY OF THE CASE

1.    Plaintiffs bring this action against Defendants who manufactured aqueous film-forming foam ("AFFF"), exposure to which resulted in Plaintiffs' serious personal injuries. The AFFF manufactured by Defendants contained per- and polyfluoroalkyl substances ("PFAS") including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS").

2.    PFOS and PFOA are fluorosurfactants that repel oil, grease, and water. PFOS, PFOA, and/or their chemical precursors, are or were components of AFFF products, which are firefighting suppressant agents used in training and firefighting activities for fighting Class B fires. Class B fires include fires involving hydrocarbon fuels such as petroleum or other flammable liquids.

3.    PFOS and PFOA are mobile, persist indefinitely in the environment, bioaccumulate in individual organisms and humans, and biomagnify up the food chain.  PFOS and PFOA are also associated with multiple and significant adverse health effects in humans, including but not limited to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension.

4.    At various times from the 1960s through today, Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOS, PFOA, and/or their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or perfluourinated chemicals contained in AFFF.

5.    This Complaint refers to AFFF, PFOA, PFOS, PFAS compounds, and fluorosurfactants collectively as "Fluorosurfactant Products."

6.    Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that firefighters would be exposed to these toxic compounds during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

7.    Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that PFAS are toxic, persist indefinitely, and would be routinely released into the environment, including the drinking water supply, even when the AFFF was used as directed and intended by Defendants.

8.    Due to the widespread PFAS contamination caused by Defendants' Fluorosurfactant Products, including the contamination of Plaintiffs' drinking water supplies, Plaintiffs have suffered serious personal injuries set forth in detail below. Plaintiffs' injuries are a direct result of their exposure to the PFAS contamination present in their drinking water supplies.

9.    Plaintiffs, as residents and those who visited, worked, or resided in the contaminated areas, have been unknowingly exposed for many years to dangerous PFAS levels.

10.    Plaintiffs' unwitting exposure to PFAS in their water supply as a result of Defendants' conduct set forth below is the direct and proximate cause of Plaintiffs' injuries.

11.    Plaintiffs file this lawsuit to recover compensatory and all other damages, including

but not limited to past and future (1) expenses for care, treatment and hospitalization incident to their injuries;  (2) compensation for physical pain and suffering;  (3) loss of income, wages, or earning capacity; (4) compensation for mental or emotional pain and anguish; (5) physical impairment; (6) loss of companionship and society;  (7) inconvenience; (8) loss of enjoyment of life; and (9) exemplary damages.

## II.    PARTIES

### A. **Plaintiffs**

12.    Plaintiff Edward Loving is a citizen and resident of Los Angeles, California in Los Angeles County. From approximately 1999 to 2025, Plaintiff Edward Loving was regularly exposed to PFAS through drinking water at multiple residences in Los Angeles, California.

13.    On or about 2010, Plaintiff Edward Loving was diagnosed with kidney cancer in Los Angeles, California and subsequently underwent a right partial nephrectomy and radiation therapy.

14.    Plaintiff Dawn Kahrs is a citizen and resident of Redding, California. From approximately 2019 to 2025, Plaintiff Dawn Kahrs was regularly exposed to PFAS through drinking water at a residence in Redding, California.

15.    On or about February 2025, Plaintiff Dawn Kahrs was diagnosed with kidney cancer in Sacramento, California and subsequently underwent an ablation.

16.    Plaintiff Matthew Kaiser is a citizen and resident of Modesto, California. From approximately 1972 to 2025, Plaintiff Matthew Kaiser was regularly exposed to PFAS through drinking water at multiple residences in Modesto, California.

17.    On or about 2011, Plaintiff Matthew Kaiser was diagnosed with testicular cancer in Modesto, California and subsequently underwent a right total orchiectomy and chemotherapy. On or about 2011, Plaintiff Matthew Kaiser was diagnosed with kidney cancer in Modesto, California and subsequently underwent a left radical nephrectomy.

18.    Plaintiff Michael Knight is a citizen and resident of Bakersfield, California. From approximately 1991 to 2025, Plaintiff Michael Knight was regularly exposed to PFAS through drinking water at multiple residences in Bakersfield, California.

19.    On or about 2015, Plaintiff Michael Knight was diagnosed with testicular cancer in Bakersfield, California and subsequently underwent a right total orchiectomy.

20.    Plaintiff Eli Landau is a citizen and resident of San Diego, California. From approximately 1981 to 2025, Plaintiff Eli Landau was regularly exposed to PFAS through drinking water at residences and workplaces in San Diego, California; Santa Monica, California; and Los Angeles, California.

21.    On or about 2006, Plaintiff Eli Landau was diagnosed with testicular cancer in Los Angeles, California and subsequently underwent a right total orchiectomy and radiation therapy.

22.    Plaintiff Ronnie Lewis is a citizen and resident of Livermore, California. From approximately 1976 to 2025, Plaintiff Ronnie Lewis was regularly exposed to PFAS through drinking water at residences in Livermore, California and Hayward, California.

23.    On or about 2010, Plaintiff Ronnie Lewis was diagnosed with kidney cancer in Pleasanton, California and subsequently underwent a right radical nephrectomy.

24.    Plaintiff Scott Lindquist is a citizen and resident of Pleasanton, California. From approximately 1973 to 2025, Plaintiff Scott Lindquist was regularly exposed to PFAS through drinking water at residences in Pleasanton, California and Livermore, California.

25.    On or about 2024, Plaintiff Scott Lindquist was diagnosed with testicular cancer in Dublin, California and subsequently underwent a left total orchiectomy.

26.    Plaintiff Jimmie Littrell, Jr. is a citizen and resident of Menifee, California. From approximately 1970 to 2025, Plaintiff Jimmie Littrell, Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in Menifee, California; Phoenix, Arizona; and Tucson, Arizona.

27.    On or about 2019, Plaintiff Jimmie Littrell, Jr. was diagnosed with clear cell renal carcinoma in Murrieta, California and subsequently underwent a right radical nephrectomy.

28.    Plaintiff Jessie Lopez is a citizen and resident of Oxnard, California. From approximately 2003 to 2025, Plaintiff Jessie Lopez was regularly exposed to PFAS through drinking water at residences and workplaces in Oxnard, California and Port Hueneme, California.

29.    On or about 2021, Plaintiff Jessie Lopez was diagnosed with testicular cancer in

1    Oxnard, California and subsequently underwent a left total orchiectomy and chemotherapy.

2        30.    Plaintiff Oscar Luna is a citizen and resident of Chula Vista, California. From

3    approximately 1993 to 2025, Plaintiff Oscar Luna was regularly exposed to PFAS through

4    drinking water at residences and workplaces in Chula Vista, California; San Diego, California;

5    Los Angeles, California; and Santa Clarita, California.

6        31.    On or about 2012, Plaintiff Oscar Luna was diagnosed with testicular cancer in Los

7    Angeles, California and subsequently underwent a right total orchiectomy and chemotherapy.

8        32.    Plaintiff Clark Lunde is a citizen and resident of Anaheim, California. From

9    approximately 1971 to 2025, Plaintiff Clark Lunde was regularly exposed to PFAS through

10   drinking water at residences and workplaces in Anaheim, California; Prescott Valley, Arizona;

11   Orange, California; and Buena Park, California.

12       33.    On or about 2014, Plaintiff Clark Lunde was diagnosed with kidney cancer in Palm

13   Springs, California and subsequently underwent an ablation.

14       34.    Plaintiff Anthony Luu is a citizen and resident of Valencia, California. From

15   approximately 2000 to 2025, Plaintiff Anthony Luu was regularly exposed to PFAS through

16   drinking water at residences and workplaces in Valencia, California; Sherman Oaks, California;

17   Woodland Hills, California; Garden Grove, California; San Diego, California; Los Angeles,

18   California; and Winnetka, California.

19       35.    On or about 2021, Plaintiff Anthony Luu was diagnosed with testicular cancer in

20   Los Angeles, California and subsequently underwent a right total orchiectomy.

21       36.    Plaintiff Stacey Lyster is a citizen and resident of Mammoth Lakes, California.

22   From approximately 1971 to 2004, Plaintiff Stacey Lyster was regularly exposed to PFAS through

23   drinking water at residences and workplaces in Canyon Country, California; Studio City,

24   California; Los Angeles, California; West Hollywood, California; and Encino, California.

25       37.    On or about 2008, Plaintiff Stacey Lyster was diagnosed with clear cell renal

26   carcinoma in Los Angeles, California and subsequently underwent a left radical nephrectomy and

27   adrenalectomy.

28       38.    Plaintiff Steven Martinez is a citizen and resident of Pomona, California. From

approximately 1986 to 2025, Plaintiff Steven Martinez was regularly exposed to PFAS through drinking water at residences and workplaces in Pomona, California; Azusa, California; Los Angeles, California; Pico Rivera, California; and South El Monte, California. Plaintiff Steven Martinez was also exposed to PFAS through drinking water while serving in the army and stationed at Fort Bliss in El Paso, Texas.

39.     On or about 2023, Plaintiff Steven Martinez was diagnosed with testicular cancer in Apple Valley, California and subsequently underwent a left total orchiectomy and chemotherapy.

40.     Plaintiff Charles Maxwell is a citizen and resident of San Bernardino, California. From approximately 2011 to 2025, Plaintiff Charles Maxwell was regularly exposed to PFAS through drinking water at residences in San Bernardino, California and Los Angeles, California.

41.     On or about 2024, Plaintiff Charles Maxwell was diagnosed with kidney cancer in Inglewood, California and subsequently underwent a left radical nephrectomy and immunotherapy.

42.     Plaintiff Erik McCornack is a citizen and resident of Paso Robles, California. From approximately 1990 to 2025, Plaintiff Erik McCornack was regularly exposed to PFAS through drinking water at residences and workplaces in Paso Robles, California; Atascadero, California; and San Luis Obispo, California.

43.     On or about 2009, Plaintiff Erik McCornack was diagnosed with stage three testicular cancer in Templeton, California and subsequently underwent a right total orchiectomy and chemotherapy.

44.     Plaintiff John McElheny is a citizen and resident of Citrus Heights, California. From approximately 1999 to 2018, Plaintiff John McElheny was regularly exposed to PFAS through drinking water at residences in Sacramento, California; Fair Oaks, California; Folsom, California; Carmichael, California; Roseville, California; and Costa Mesa, California.

45.     On or about 2014, Plaintiff John McElheny was diagnosed with stage two testicular cancer in Folsom, California and subsequently underwent a left total orchiectomy and chemotherapy.

1    46.    Plaintiff Jeffrey McEntire is a citizen and resident of Roseville, California. From

2    approximately 2004 to 2020, Plaintiff Jeffrey McEntire was regularly exposed to PFAS through

3    drinking water at residences in Roseville, California; Whittier, California; and Sacramento,

4    California.

5    47.    On or about 2014, Plaintiff Jeffrey McEntire was diagnosed with testicular cancer

6    in Roseville, California and subsequently underwent an orchiectomy and chemotherapy.

7    48.    Plaintiff Troy McIntyre is a citizen and resident of Spring Valley, California. From

8    approximately 1976 to 2025, Plaintiff Troy McIntyre was regularly exposed to PFAS through

9    drinking water at residences and workplaces in Spring Valley, California; Chula Vista, California;

10    and San Diego, California.

11    49.    On or about 2013, Plaintiff Troy McIntyre was diagnosed with testicular cancer in

12    La Mesa, California and subsequently underwent a right total orchiectomy.

13    50.    Plaintiff Patrick Mckenna is a citizen and resident of Watsonville, California. From

14    approximately 1988 to 2025, Plaintiff Patrick Mckenna was regularly exposed to PFAS through

15    drinking water at residences and workplaces in Watsonville, California; Santa Cruz, California;

16    Aptos, California; Lantana, Florida; Los Osos, California; and Sturgeon Bay, Wisconsin. From

17    approximately 1978 to 1980, Plaintiff Patrick Mckenna was also exposed to PFAS through

18    drinking water while serving in the military and stationed at Fort McCoy in Monroe County,

19    Wisconsin, Wisconsin Army National Guard in Green Bay, Wisconsin, and Fort Leonard Wood

20    in Pulaski County, Missouri.

21    51.    On or about 2020, Plaintiff Patrick Mckenna was diagnosed with kidney cancer in

22    Santa Cruz, California and subsequently underwent a left radical nephrectomy.

23    52.    Plaintiff Michael McLeod is a citizen and resident of Bakersfield, California. From

24    approximately 1965 to 2025, Plaintiff Michael McLeod was regularly exposed to PFAS through

25    drinking water at multiple residences in Bakersfield, California.

26    53.    On or about 2009, Plaintiff Michael McLeod was diagnosed with kidney cancer in

27    Bakersfield, California and subsequently underwent a left radical nephrectomy. On or about 2018,

28    Plaintiff Michael McLeod was diagnosed with testicular cancer in Bakersfield, California and

subsequently underwent a right total orchiectomy.

54.    Plaintiff Jose Mercado is a citizen and resident of Spring Valley, California. From approximately 1971 to 2025, Plaintiff Jose Mercado was regularly exposed to PFAS through drinking water at residences in Spring Valley, California; Chula Vista, California; and San Diego, California.

55.    On or about 2015, Plaintiff Jose Mercado was diagnosed with kidney cancer in Chula Vista, California and subsequently underwent a right radical nephrectomy.

56.    Plaintiff Sandra Meza is a citizen and resident of Riverside, California. From approximately 1984 to 2025, Plaintiff Sandra Meza was regularly exposed to PFAS through drinking water at residences in Riverside, California; San Bernardino, California; Alhambra, California; and Azusa, California.

57.    On or about 2021, Plaintiff Sandra Meza was diagnosed with kidney cancer in Riverside, California and subsequently underwent a left radical nephrectomy and immunotherapy. In or about 2021, Plaintiff Sandra Meza was diagnosed with thyroid disease in Riverside, California for which she is currently undergoing continued treatment.

58.    Plaintiff Stephan Mintz is a citizen and resident of Santa Clarita, California. From approximately 1976 to 2025, Plaintiff Stephan Mintz was regularly exposed to PFAS through drinking water at residences in Santa Clarita, California; Hawthorne, California; Los Angeles, California; and Inglewood, California.

59.    On or about 2013, Plaintiff Stephan Mintz was diagnosed with kidney cancer in Torrance, California and subsequently underwent a right partial nephrectomy.

60.    Plaintiff Henry Monreal is a citizen and resident of Chula Vista, California. From approximately 1970 to 2025, Plaintiff Henry Monreal was regularly exposed to PFAS through drinking water at residences and workplaces in San Diego, California and Chula Vista, California.

61.    On or about 2018, Plaintiff Henry Monreal was diagnosed with kidney cancer in San Diego, California and subsequently underwent a cryoablation.

62.    Plaintiff Benjamin Montoya is a citizen and resident of Hesperia, California. From approximately 1997 to 2025, Plaintiff Benjamin Montoya was regularly exposed to PFAS through

1    drinking water at residences and workplaces in Hesperia, California; Phelan, California;

2    Rosemead, California; and Rialto, California.

3         63.    On or about 2015, Plaintiff Benjamin Montoya was diagnosed with clear cell renal

4    carcinoma in Hesperia, California and subsequently underwent a left partial nephrectomy.

5         64.    Plaintiff Jeffrey Moore is a citizen and resident of San Juan Capistrano, California.

6    From approximately 1982 to 2025, Plaintiff Jeffrey Moore was regularly exposed to PFAS through

7    drinking water at residences and workplaces in San Juan Capistrano, California; Costa Mesa,

8    California; Newport Beach, California; Trabuco Canyon, California; Ontario, California; Balboa,

9    California; Anaheim, California; and Irvine, California.

10        65.    On or about 2023, Plaintiff Jeffrey Moore was diagnosed with kidney cancer in

11   Newport Beach, California and subsequently underwent a left radical nephrectomy and an

12   adrenalectomy and immunotherapy.

13        66.    Plaintiff Mario Morelli is a citizen and resident of Fontana, California. From

14   approximately 1983 to 2025, Plaintiff Mario Morelli was regularly exposed to PFAS through

15   drinking water at residences in Bloomington, California; Fontana, California; and Riverside,

16   California.

17        67.    On or about 2015, Plaintiff Mario Morelli was diagnosed with kidney cancer in

18   Fontana, California and subsequently underwent a right radical nephrectomy.

19        68.    Plaintiff Julie Moreno is a citizen and resident of Montebello, California. From

20   approximately 1981 to 2025, Plaintiff Julie Moreno was regularly exposed to PFAS through

21   drinking water at residences in Montebello, California; Greensboro, North Carolina; Monterey

22   Park, California; Alhambra, California; and Los Angeles, California.

23        69.    On or about 2024, Plaintiff Julie Moreno was diagnosed with kidney cancer in

24   Baldwin Park, California and subsequently underwent a left radical nephrectomy.

25        70.    Plaintiff Patricia Munive is a citizen and resident of San Diego, California. From

26   approximately 1975 to 2025, Plaintiff Patricia Munive was regularly exposed to PFAS through

27   drinking water at residences and workplaces in San Diego, California, and Poway, California.

28        71.    On or about 2015, Plaintiff Patricia Munive was diagnosed with thyroid disease in

San Diego, California. On or about 2023, Plaintiff Patricia Munive was diagnosed with kidney cancer in San Diego, California and subsequently underwent a left radical nephrectomy.

72.    Plaintiff Glenn Myatt is a citizen and resident of Westminster, California. From approximately 1982 to 2025, Plaintiff Glenn Myatt was regularly exposed to PFAS through drinking water at residences in Westminster, California; Anaheim, California; Midway City, California; Garden Grove, California; and Huntington Beach, California. From approximately 1962 to 1972, Plaintiff Glenn Myatt was also exposed to PFAS through drinking water while residing at Minot Air Force Base in Ward County, North Dakota, and Altus Air Force Base in Altus, Oklahoma.

73.    On or about 2017, Plaintiff Glenn Myatt was diagnosed with kidney cancer in Irvine, California and subsequently underwent a left partial nephrectomy.

74.    Plaintiff Raymond Nazarian is a citizen and resident of Glendale, California. From approximately 1992 to 2025, Plaintiff Raymond Nazarian was regularly exposed to PFAS through drinking water at multiple residences in Glendale, California.

75.    On or about 2010, Plaintiff Raymond Nazarian was diagnosed with thyroid disease in Los Angeles, California. On or about 2012, Plaintiff Raymond Nazarian was diagnosed with kidney cancer in Los Angeles, California and subsequently underwent a right partial nephrectomy.

76.    Plaintiff David Nidetz is a citizen and resident of Sacramento, California. From approximately 1993 to 2025, Plaintiff David Nidetz was regularly exposed to PFAS through drinking water at residences in Sacramento, California; Elk Grove, California; and Vernon Hills, Illinois.

77.    On or about 2010, Plaintiff David Nidetz was diagnosed with kidney cancer in Sacramento, California and subsequently underwent a right partial nephrectomy.

78.    Plaintiff Dan Olson is a citizen and resident of Monrovia, California. From approximately 1959 to 2025, Plaintiff Dan Olson was regularly exposed to PFAS through drinking water at residences and workplaces in Monrovia, California; Azusa, California; Perris, California; and Arcadia, California.

79.    On or about 2025, Plaintiff Dan Olson was diagnosed with clear cell renal

carcinoma in Baldwin Park, California and subsequently underwent a right partial nephrectomy.

80.    Plaintiff Lydia Ortega is a citizen and resident of Jurupa Valley, California. From approximately 1980 to 2025, Plaintiff Lydia Ortega was regularly exposed to PFAS through drinking water at residences in Jurupa Valley, California; Riverside, California; Upland, California; Fresno, California; Pico Rivera, California; and Whittier, California.

81.    On or about 2017, Plaintiff Lydia Ortega was diagnosed with kidney cancer in Loma Linda, California and subsequently underwent a left radical nephrectomy.

82.    Plaintiff Roger Pahl is a citizen and resident of Palm Springs, California. From approximately 1992 to 2025, Plaintiff Roger Pahl was regularly exposed to PFAS through drinking water at residences in Palm Springs, California; Carrollton, Kentucky; Cathedral City, California; Dallas, Texas; Indio, California; San Diego, California; and Aptos, California.

83.    On or about 2021, Plaintiff Roger Pahl was diagnosed with kidney cancer in Palm Springs, California and is currently undergoing related treatment.

84.    Plaintiff Krisie Panagiotou is a citizen and resident of Yorba Linda, California. From approximately 1989 to 2025, Plaintiff Krisie Panagiotou was regularly exposed to PFAS through drinking water at residences and workplaces in Yorba Linda, California; City of Industry, California; Brea, California; and West Covina, California.

85.    On or about 2020, Plaintiff Krisie Panagiotou was diagnosed with kidney cancer in Irvine, California and subsequently underwent a left partial nephrectomy.

86.    Plaintiff Ronald Papes is a citizen and resident of Discovery Bay, California. From approximately 1969 to 2025, Plaintiff Ronald Papes was regularly exposed to PFAS through drinking water at residences and workplaces in Discovery Bay, California; Atascadero, California; Scotts Valley, California; and Mountain View, California.

87.    On or about 2024, Plaintiff Ronald Papes was diagnosed with kidney cancer in Stanford, California and subsequently underwent a left partial nephrectomy.

88.    Plaintiff Emily Perez is a citizen and resident of Fillmore, California. From approximately 1977 to 2025, Plaintiff Emily Perez was regularly exposed to PFAS through drinking water at residences and workplaces in Fillmore, California; Ventura, California; and

Santa Paula, California.

89.    On or about 2021, Plaintiff Emily Perez was diagnosed with kidney cancer in Ventura, California and subsequently underwent a radical nephrectomy.

90.    Plaintiff Leslie Peterson is a citizen and resident of Santa Rosa, California. From approximately 1979 to 2025, Plaintiff Leslie Peterson was regularly exposed to PFAS through drinking water at multiple residences in Santa Rosa, California.

91.    On or about 2017, Plaintiff Leslie Peterson was diagnosed with kidney cancer in Santa Rosa, California and subsequently underwent a left partial nephrectomy.

92.    Plaintiff Jorge Pisco is a citizen and resident of Los Angeles, California. From approximately 1991 to 2025, Plaintiff Jorge Pisco was regularly exposed to PFAS through drinking water at residences in Los Angeles, California.

93.    On or about 2012, Plaintiff Jorge Pisco was diagnosed with testicular cancer in Los Angeles, California and subsequently underwent an orchiectomy.

94.    Plaintiff Brian Pollard is a citizen and resident of Laguna Hills, California. From approximately 1979 to 2015, Plaintiff Brian Pollard was regularly exposed to PFAS through drinking water at residences and workplaces in Cerritos, California; Diamond Bar, California; Los Angeles, California; San Diego, California; and West Hollywood, California.

95.    On or about 2012, Plaintiff Brian Pollard was diagnosed with testicular cancer in Santa Monica, California and subsequently underwent a total orchiectomy. On or about 2012, Plaintiff Brian Pollard was diagnosed with thyroid disease in Los Angeles, California.

96.    Plaintiff Latasha Ramos is a citizen and resident of Oxnard, California. From approximately 1976 to 2025, Plaintiff Latasha Ramos was regularly exposed to PFAS through drinking water at residences in Santa Paula, California; Filmore, California; Oxnard, California; Ventura, California; Chandler, Arizona; and Camarillo, California.

97.    On or about 2024, Plaintiff Latasha Ramos was diagnosed with clear cell renal carcinoma in Los Angeles, California.

98.    Plaintiff Jesus Ramos is a citizen and resident of Sacramento, California. From approximately 1980 to 2025, Plaintiff Jesus Ramos was regularly exposed to PFAS through

1    drinking water at residences in Sacramento, California.

2        99.    On or about 2023, Plaintiff Jesus Ramos was diagnosed with kidney cancer in

3    Sacramento, California and subsequently underwent a radical nephrectomy, chemotherapy, and

4    immunotherapy.

5        100.    Plaintiff Cynthia Rawls Harwood is a citizen and resident of Santa Cruz, California.

6    From approximately 1959 to 2025, Plaintiff Cynthia Rawls Harwood was regularly exposed to

7    PFAS through drinking water at residences and workplaces in Santa Cruz, California; Soquel,

8    California; and Capitola, California.

9        101.    On or about 1990, Plaintiff Cynthia Rawls Harwood was diagnosed with thyroid

10   disease in Capitola, California. On or about 2010, Plaintiff Cynthia Rawls Harwood was diagnosed

11   with clear cell renal carcinoma in Santa Cruz, California and subsequently underwent a partial

12   nephrectomy.

13       102.    Plaintiff Sheri Reese is a citizen and resident of Clearlake, California. From

14   approximately 1978 to 2007, Plaintiff Sheri Reese was regularly exposed to PFAS through

15   drinking water at residences and workplaces in San Jose, California; Vancouver, Washington; and

16   Fresno, California. Plaintiff Sheri Reese was also exposed to PFAS through drinking water while

17   residing at Fort Carson in El Paso County, Colorado.

18       103.    On or about 2006, Plaintiff Sheri Reese was diagnosed with kidney cancer in Palo

19   Alto, California and subsequently underwent a radical nephrectomy.

20       104.    Plaintiff William Rodriguez is a citizen and resident of San Diego, California. From

21   approximately 1980 to 2025, Plaintiff William Rodriguez was regularly exposed to PFAS through

22   drinking water at residences in National City, California; El Cajon, California; San Diego,

23   California; and Spring Valley, California.

24       105.    On or about 2005, Plaintiff William Rodriguez was diagnosed with testicular

25   cancer in San Diego, California and subsequently underwent a total orchiectomy. On or about

26   2009, Plaintiff William Rodriguez was again diagnosed with testicular cancer in San Diego,

27   California and subsequently underwent a retroperitoneal lymph node dissection.

28       106.    Plaintiff Hector Rodriguez is a citizen and resident of Grass Valley, California.

From approximately 1953 to 1993, Plaintiff Hector Rodriguez was regularly exposed to PFAS through drinking water at residences and workplaces in Los Angeles, California; Whittier, California; Fullerton, California; Rosemead, California; San Dimas, California; and Norwalk, California.

107.    On or about 2024, Plaintiff Hector Rodriguez was diagnosed with kidney cancer in Auburn, California and subsequently underwent a cryoablation.

108.    Plaintiff Gregg Rogenstein is a citizen and resident of West Hollywood, California. From approximately 1968 to 2025, Plaintiff Gregg Rogenstein was regularly exposed to PFAS through drinking water at residences in Huntington, New York; Ann Arbor, New York; Los Angeles, California; and West Hollywood, California.

109.    On or about 2020, Plaintiff Gregg Rogenstein was diagnosed with testicular cancer in Beverly Hills, California and subsequently underwent a total orchiectomy, chemotherapy, and radiation treatment.

110.    Plaintiff Christopher Rohan is a citizen and resident of Costa Mesa, California. From approximately 1959 to 2025, Plaintiff Christopher Rohan was regularly exposed to PFAS through drinking water at residences and workplaces in La Crescenta, California; Costa Mesa, California; and Glendale, California.

111.    On or about 2020, Plaintiff Christopher Rohan was diagnosed with kidney cancer in Newport Beach, California and subsequently underwent a radical nephrectomy. On or about 2021, Plaintiff Christopher Rohan was again diagnosed with kidney cancer in Newport Beach, California and subsequently underwent immunotherapy. On or about 2024, Plaintiff Christopher Rohan was again diagnosed with kidney cancer in Newport Beach, California and subsequently underwent a nephroureterectomy and immunotherapy.

112.    Plaintiff Ulises Rojas Zamudio is a citizen and resident of Live Oak, California. From approximately 1991 to 2025, Plaintiff Ulises Rojas Zamudio was regularly exposed to PFAS through drinking water at residences and workplaces in El Monte, California; Yuba City, California; Marysville, California; Olivehurst, California; and Live Oak, California.

113.    On or about 2020, Plaintiff Ulises Rojas Zamudio was diagnosed with kidney

1   cancer in Marysville, California and subsequently underwent a radical nephrectomy.

2    114. Plaintiff Mohamed Sabra is a citizen and resident of Sacramento, California. From

3   approximately 2005 to 2025, Plaintiff Mohamed Sabra was regularly exposed to PFAS through

4   drinking water at residences in Sacramento, California and Elk Grove, California.

5    115. On or about 2023, Plaintiff Mohamed Sabra was diagnosed with testicular cancer

6   in Sacramento, California and subsequently underwent a total orchiectomy and retroperitoneal

7   lymph node dissection.

8    116. Plaintiff Yolanda Sanchez is a citizen and resident of Moreno Valley, California.

9   From approximately 1973 to 2025, Plaintiff Yolanda Sanchez was regularly exposed to PFAS

10  through drinking water at residences in Los Angeles, California; Alhambra, California; and

11  Moreno Valley, California.

12   117. On or about 2023, Plaintiff Yolanda Sanchez was diagnosed with kidney cancer in

13  Moreno Valley, California and subsequently underwent a radical nephrectomy and

14  immunotherapy.

15   118. Plaintiff Carlon Scott is a citizen and resident of San Diego, California. From

16  approximately 1982 to 2025, Plaintiff Carlon Scott was regularly exposed to PFAS through

17  drinking water at residences and workplaces in Shingle Springs, California; Los Angeles,

18  California; and San Diego, California.

19   119. On or about 2020, Plaintiff Carlon Scott was diagnosed with testicular cancer in

20  San Diego, California and subsequently underwent chemotherapy.

21   120. Plaintiff Josue Silva is a citizen and resident of Riverside, California. From

22  approximately 2001 to 2025, Plaintiff Josue Silva was regularly exposed to PFAS through drinking

23  water at residences and workplaces in Riverside, California and Jurupa Valley, California.

24   121. On or about 2016, Plaintiff Josue Silva was diagnosed with testicular cancer in

25  Loma Linda, California and subsequently underwent a total orchiectomy and chemotherapy.

26   122. Plaintiff Donald Simonds is a citizen and resident of Brentwood, California. From

27  approximately 1973 to 2023, Plaintiff Donald Simonds was regularly exposed to PFAS through

28  drinking water at residences in Pittsburg, California and Antioch, California.

123.    On or about 2010, Plaintiff Donald Simonds was diagnosed with kidney cancer in Walnut Creek, California and subsequently underwent a partial nephrectomy. On or about 2022, Plaintiff Donald Simonds was diagnosed with testicular cancer in Walnut Creek, California and subsequently underwent a total orchiectomy.

124.    Plaintiff Gordon Simpson is a citizen and resident of Garden Grove, California. From approximately 1968 to 2025, Plaintiff Gordon Simpson was regularly exposed to PFAS through drinking water at residences and workplaces in Garden Grove, California; Santa Ana, California; Foothill Ranch, California; Anaheim, California; Long Beach, California; Riverside, California; and Orange, California. Plaintiff Gordon Simpson was also exposed to PFAS through drinking water while serving in the Navy Reserve and stationed at Naval Air Station Memphis (now Naval Support Activity Mid-South) in Millington, Tennessee.

125.    On or about 2022, Plaintiff Gordon Simpson was diagnosed with kidney cancer in Orange, California and subsequently underwent a radical nephrectomy.

126.    Plaintiff Debra Smith is a citizen and resident of Santa Clarita, California. From approximately 1953 to 2025, Plaintiff Debra Smith was regularly exposed to PFAS through drinking water at residences and workplaces in Des Moines, Iowa; Santa Monica, California; Los Angeles, California; and Santa Clarita, California.

127.    On or about 1995, Plaintiff Debra Smith was diagnosed with thyroid disease in Beverly Hills, California. On or about 2007, Plaintiff Debra Smith was diagnosed with kidney cancer in Pasadena, California and subsequently underwent a radical nephrectomy.

128.    Plaintiff Christopher Smith is a citizen and resident of San Jose, California. From approximately 2009 to 2025, Plaintiff Christopher Smith was regularly exposed to PFAS through drinking water at residences and workplaces in New York, New York; Hoboken, New Jersey; River Edge, New Jersey; and San Jose, California.

129.    On or about 2020, Plaintiff Christopher Smith was diagnosed with testicular cancer in San Carlos, California and subsequently underwent a total orchiectomy and chemotherapy.

130.    Plaintiff James Spohn is a citizen and resident of Isleton, California. From approximately 1967 to 2018, Plaintiff James Spohn was regularly exposed to PFAS through

1    drinking water at residences and workplaces in Stockton, California and Tracy, California.

2        131.    On or about 2012, Plaintiff James Spohn was diagnosed with clear cell renal
3    carcinoma in French Camp, California and subsequently underwent a radical nephrectomy.

4        132.    Plaintiff Walter Stewart is a citizen and resident of Chula Vista, California. From
5    approximately 1970 to 2025, Plaintiff Walter Stewart was regularly exposed to PFAS through
6    drinking water at residences and workplaces in Chula Vista, California.

7        133.    On or about 2024, Plaintiff Walter Stewart was diagnosed with clear cell renal
8    carcinoma in Tulsa, Oklahoma and subsequently underwent a radical nephrectomy.

9        134.    Plaintiff Stephen Stowell is a citizen and resident of Yorba Linda, California. From
10    approximately 1964 to 2025, Plaintiff Stephen Stowell was regularly exposed to PFAS through
11    drinking water at residences and workplaces in La Mirada, California; Anaheim, California; and
12    Yorba Linda, California.

13        135.    On or about 2020, Plaintiff Stephen Stowell was diagnosed with kidney cancer in
14    Fullerton, California and subsequently underwent a tumor removal and partial nephrectomy. On
15    or about 2021, Plaintiff Stephen Stowell was diagnosed with thyroid disease in Yorba Linda,
16    California.

17        136.    Plaintiff Berkay Surmeli is a citizen and resident of Long Beach, California. From
18    approximately 2014 to 2025, Plaintiff Berkay Surmeli was regularly exposed to PFAS through
19    drinking water at residences in Garden Grove, California and Long Beach, California.

20        137.    On or about 2018, Plaintiff Berkay Surmeli was diagnosed with clear cell renal
21    carcinoma in Torrance, California and subsequently underwent a radical nephrectomy.

22        138.    Plaintiff Charles Taliaferro, Jr. is a citizen and resident of Concord, California.
23    From approximately 1996 to 2010, Plaintiff Charles Taliaferro, Jr. was regularly exposed to PFAS
24    through drinking water at residences and workplaces in Martinez, California; Concord, California;
25    Pittsburg, California; and Richmond, California.

26        139.    On or about 2010, Plaintiff Charles Taliaferro, Jr. was diagnosed with kidney
27    cancer in Walnut Creek, California and subsequently underwent a radical nephrectomy.

28        140.    Plaintiff James Turner is a citizen and resident of Fairfield, California. From

approximately from 1955 to 2025, Plaintiff James Turner was regularly exposed to PFAS through drinking water at residences and workplaces in Fairfield, California and Vacaville, California. Plaintiff James Turner was also exposed to PFAS through drinking water while living and working at Travis Air Force Base in Fairfield, California.

141.    On or about 2015, Plaintiff James Turner was diagnosed with clear cell renal carcinoma in Fairfield, California and subsequently underwent a radical nephrectomy.

142.    Plaintiff Jesse Vasquez, IV is a citizen and resident of Redlands, California. From approximately 1998 to 2025, Plaintiff Jesse Vasquez, IV was regularly exposed to PFAS through drinking water at residences in Redlands, California.

143.    On or about 2024, Plaintiff Jesse Vasquez, IV was diagnosed with testicular cancer in Moreno Valley, California and subsequently underwent a total orchiectomy.

144.    Plaintiff Jay Tipple, Jr. is a citizen and resident of Georgetown, Tennessee. From approximately 1998 to 2025, Plaintiff Jay Tipple, Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in Roseville, Antelope, Sacramento, Citrus Heights, Ontario, and Anaheim, California, and Georgetown, Tennessee.

145.    On or about 2013, Plaintiff Jay Tipple, Jr. was diagnosed with kidney cancer in Porterville, California and subsequently underwent a right partial nephrectomy.

146.    Plaintiff Alan Barnett is a citizen and resident of Winston, Oregon. From approximately 2003 to 2010, Plaintiff Alan Barnett was regularly exposed to PFAS through drinking water at residences and workplaces in Yucaipa, California; Whitewater, California; and Murrieta, California.

147.    On or about May 5, 2006, Plaintiff Alan Barnett was diagnosed with testicular cancer in Murrieta, California and subsequently underwent a total left orchiectomy, retroperitoneal lymph node dissection, and chemotherapy treatment.

148.    Plaintiff Shon Hueth is a citizen and resident of Springfield, Oregon. From approximately 2002 to 2025, Plaintiff Shon Hueth was regularly exposed to PFAS through drinking water at residences and workplaces in Grand Junction, Colorado; Chico, California; and Springfield, Oregon.

149.    On or about June 2015, Plaintiff Shon Hueth was diagnosed with kidney cancer in Springfield, Oregon and subsequently underwent a partial left nephrectomy.

150.    Plaintiff Pedro Hernandez is a citizen and resident of Fair West, Utah. From approximately 1969 to 2024, Plaintiff Pedro Hernandez was regularly exposed to PFAS through drinking water at residences and workplaces in Dugway Proving Ground, Salt Lake City, Utah; Fort Carson, Colorado; Fort Irwin, California; and Ogden, Utah.

151.    On or about May 2009, Plaintiff Pedro Hernandez was diagnosed with kidney cancer in Ogden, Utah and subsequently underwent a partial right nephrectomy.

152.    Plaintiff Rhonda Wilson is a citizen and resident of Tillamook, Oregon. From approximately 1987 to 2025, Plaintiff Rhonda Wilson was regularly exposed to PFAS through drinking water at residences in Tillamook, Oregon; Oceanside, California; and Carlsbad, California.

153.    On or about 2005, Plaintiff Rhonda Wilson was diagnosed with kidney cancer in Tualatin, Oregon and subsequently underwent a partial right nephrectomy.

154.    Plaintiff Kevin Englund is a citizen and resident of Vineyard, Utah. From approximately 1995 to 2025, Plaintiff Kevin Englund was regularly exposed to PFAS through drinking water at residences and workplaces in Mission Viejo, California; Provo, Utah; Orem, Utah; and Vineyard, Utah.

155.    On or about 2021, Plaintiff Kevin Englund was diagnosed with testicular cancer in American Fork, Utah and subsequently underwent a total left orchiectomy.

156.    Plaintiff Matthew Bishop is a citizen and resident of Depoe Bay, Oregon. From approximately 2001 to 2023, Plaintiff Matthew Bishop was regularly exposed to PFAS through drinking water at residences and workplaces in Camp San Luis Obispo Military Campground, California; Rocklin, California; Roseville, California; Palo Alto, California; and Tillamook, Oregon.

157.    On or about February 2018, Plaintiff Matthew Bishop was diagnosed with testicular cancer in Roseville, California and subsequently underwent a total right orchiectomy, retroperitoneal lymph node dissection, pelvic lymph node dissection, and chemotherapy treatment.

158.    Plaintiff Brenda Honeycutt is a citizen and resident of Broken Arrow, Oklahoma. From approximately 1992 to 2022, Plaintiff Brenda Honeycutt was regularly exposed to PFAS through drinking water at residences in Fort Irwin, California; Fort Knox, Kentucky; Broken Arrow, Oklahoma; and Fort Benning, Georgia.

159.    On or about August 2019, Plaintiff Brenda Honeycutt was diagnosed with clear cell renal carcinoma in Duarte, California and subsequently underwent a radical left nephrectomy. On or about 2022, Plaintiff Brenda Honeycutt was diagnosed with thyroid disease in Elizabethtown, Kentucky. On or about May 22, Plaintiff Brenda Honeycutt was once again diagnosed with clear cell renal carcinoma in Elizabethtown, Kentucky and subsequently underwent immunotherapy and radiation treatment. On or about 2024, Plaintiff Brenda Honeycutt was diagnosed with ulcerative colitis in Tulsa, Oklahoma.

160.    Plaintiff Jeremy Parker is a citizen and resident of West Chester, Pennsylvania. From approximately 1975 to 2025, Plaintiff Jeremy Parker was regularly exposed to PFAS through drinking water at residences in Upland, California; Phelan, California; La Puente, California; Santa Monica, California; Los Angeles, California; and West Chester, Pennsylvania.

161.    On or about November 2007, Plaintiff Jeremy Parker was diagnosed with testicular cancer in Los Angeles, California and subsequently underwent a total left orchiectomy and chemotherapy treatment.

162.    Plaintiff Nykkole Schillaci is a citizen and resident of Norton Shores, Michigan. From approximately 1994 to 2024, Plaintiff Nykkole Schillaci was regularly exposed to PFAS through drinking water at residences and workplaces in Fontana, California; Colton, California; Wilmington, California; Riverside, California; and Lomo Linda, California.

163.    On or about June 2019, Plaintiff Nykkole Schillaci was diagnosed with kidney cancer in Riverside, California and subsequently underwent a radical left nephrectomy.

164.    Plaintiff Mary Guerenabarrena is a citizen and resident of Portsmouth, Rhode Island. From approximately 1970 to 2025, Plaintiff Mary Guerenabarrena was regularly exposed to PFAS through drinking water at residences in Jacksonville Naval Air Station, Jacksonville, Florida; Turner Air Force Base, Albany, Georgia; Fort Ord, Pacific Grove, California; La Mesa,

1    California; Norfolk, Virginia; Newport, Rhode Island; and Portsmouth, Rhode Island.

2        165.    On or about February 2007, Plaintiff Mary Guerenabarrena was diagnosed with

3    clear cell renal carcinoma in Boston, Massachusetts and subsequently underwent a partial left

4    nephrectomy.

5        166.    Plaintiff Mary Smith is a citizen and resident of Albany, Oregon. From

6    approximately 1970 to 2010, Plaintiff Mary Smith was regularly exposed to PFAS through

7    drinking water at residences and schools in Los Angeles, California and Albany, Oregon.

8        167.    On or about 2005, Plaintiff Mary Smith was diagnosed with thyroid disease in

9    Corvallis, Oregon. On or about 2007, Plaintiff Mary Smith was diagnosed with kidney cancer in

10   Corvallis, Oregon and subsequently underwent a partial right nephrectomy. On or about February

11   2024, Plaintiff Mary Smith was again diagnosed with kidney cancer in Salem, Oregon and

12   subsequently underwent immunotherapy and chemotherapy treatment.

13       168.    Plaintiff Richard Sutton is a citizen and resident of Detroit, Michigan. From

14   approximately 1997 to 2001, Plaintiff Richard Sutton was regularly exposed to PFAS through

15   drinking water at residences in Parris Island, Port Royal, South Carolina; Camp Lejune Marine

16   Corps Base, North Carolina; Camp Pendleton, California; and Oceanside, California.

17       169.    On or about 2013, Plaintiff Richard Sutton was diagnosed with testicular cancer in

18   Cleveland Heights, Ohio and subsequently underwent a total left orchiectomy and chemotherapy

19   treatment.

20       170.    Plaintiff Bozena Tesla is a citizen and resident of Yuba City, California. From

21   approximately 1985 to 2025, Plaintiff Bozena Tesla was regularly exposed to PFAS through

22   drinking water at residences in Los Angeles, California; Fife, Washington; Auburn, Washington;

23   Manteno, Illinois; Oroville, California; Elk Grove, California; and Yuba City, California.

24       171.    On or about March 13, 2023, Plaintiff Bozena Tesla was diagnosed with kidney

25   cancer in Roseville, California and subsequently underwent a partial right nephrectomy.

26       172.    Plaintiff Valentine Vargas is a citizen and resident of Canoga Park, California.

27   From approximately 1970 to 2025, Plaintiff Valentine Vargas was regularly exposed to PFAS

28   through drinking water at residences in Canoga Park, California; Reseda, California; Encino,

1    California; and Los Angeles, California.

2         173.    On or about 2020, Plaintiff Valentine Vargas was diagnosed with kidney cancer in

3    Los Angeles, California and subsequently underwent a radical right nephrectomy.

4         174.    Plaintiff Thomas Britton is a citizen and resident of Eagle, Idaho. From

5    approximately 1970 to 2025, Plaintiff Thomas Britton was regularly exposed to PFAS through

6    drinking water at residences in Reseda, California; Marina Del Rey, California; Walnut Creek,

7    California; Boise, Idaho; and Eagle, Idaho.

8         175.    On or about July 2008, Plaintiff Thomas Britton was diagnosed with clear cell renal

9    carcinoma in Boise, Idaho and subsequently underwent a radical right nephrectomy.

10        176.    Plaintiff Christopher Coscia is a citizen and resident of Coeur d'Alene, Idaho. From

11   approximately 1970 to 2005, Plaintiff Christopher Coscia was regularly exposed to PFAS through

12   drinking water at residences in Granada Hills, California; Canyon Country, California; and Yorba

13   Linda, California.

14        177.    On or about August 2011, Plaintiff Christopher Coscia was diagnosed with

15   testicular cancer in Coeur d'Alene, Idaho and subsequently underwent a total left orchiectomy.

16        178.    Plaintiff Christopher Laird is a citizen and resident of Bangor, Maine. From

17   approximately 1998 to 2014, Plaintiff Christopher Laird was regularly exposed to PFAS through

18   drinking water at residences and workplaces in Anchorage, Alaska; Marina Del Rey, California;

19   Studio City, California; Anaheim, California; San Diego, California; and Philadelphia,

20   Pennsylvania.

21        179.    On or about 2010, Plaintiff Christopher Laird was diagnosed with testicular cancer

22   in Kingman, Arizona and subsequently underwent a total right orchiectomy and chemotherapy

23   treatment.

24        180.    Plaintiff Thomas Martinez, III, is a citizen and resident of Waimea, Hawaii. From

25   approximately 1970 to 1989, Plaintiff Thomas Martinez, III, was regularly exposed to PFAS

26   through drinking water at residences in Santa Ana, California and Redondo Beach, California.

27   Plaintiff Thomas Martinez, III, was also exposed to AFFF through his work as a firefighter in

28   Waimea, Hawaii from approximately 1995 to 1996.

181.    On or about December 2019, Plaintiff Thomas Martinez, III, was diagnosed with kidney cancer in Honolulu, Hawaii and subsequently underwent a radical right nephrectomy.

182.    Plaintiff Joshua Poetoehena is a citizen and resident of Kuna, Idaho. From approximately 1987 to 2025, Plaintiff Joshua Poetoehena was regularly exposed to PFAS through drinking water at residences in Mira Loma, California; Irvine, California; Meridian, Idaho; Boise, Idaho; Mission Viejo, California; and Kuna, Idaho.

183.    On or about June 2024, Plaintiff Joshua Poetoehena was diagnosed with testicular cancer in Orange, California and subsequently underwent a total left orchiectomy.

184.    Plaintiff Jason Prather is a citizen and resident of Boise, Idaho. From approximately 1984 to 2025, Plaintiff Jason Prather was regularly exposed to PFAS through drinking water at residences in Tustin, California; Chico, California; Costa Mesa, California; Kuna, Idaho; and Meridian, Idaho.

185.    On or about 2008, Plaintiff Jason Prather was diagnosed with testicular cancer in Chico, California and subsequently underwent a total right orchiectomy and chemotherapy treatment. On or about 2010, Plaintiff Jason Prather was diagnosed with thyroid disease. On or about 2021, Plaintiff Jason Prather was again diagnosed with testicular cancer in Meridian, Idaho and subsequently underwent a retroperitoneal lymph node dissection and chemotherapy treatment.

186.    Plaintiff David Seaton, II is a citizen and resident of Honolulu, Hawaii. From approximately 1991 to 2023, Plaintiff David Seaton, II was regularly exposed to PFAS through drinking water at residences and workplaces in the Eielson Air Force Base, Alaska; Cannon Air Force Base, Clovis, New Mexico; Santa Ana, California; Irvine, California; Tustin, California; and Anchorage, Alaska.

187.    On or about July 2022, Plaintiff David Seaton, II was diagnosed with kidney cancer in Anchorage, Alaska and subsequently underwent a radical right nephrectomy.

188.    Plaintiff Phillip Whelan is a citizen and resident of Portland, Maine. From approximately 2006 to 2015, Plaintiff Phillip Whelan was regularly exposed to PFAS through drinking water at residences in Rochester, New Hampshire; Palm Springs; California; and Scottsdale, Arizona.

189.     On or about 2016, Plaintiff Phillip Whelan was diagnosed with testicular cancer in Rockwall, Texas and subsequently underwent a total left orchiectomy and chemotherapy treatment.

190.     Plaintiff Ronald Dodge, Jr. is a citizen and resident of Canton, Georgia. From approximately 1994 to 2007, Plaintiff Ronald Dodge, Jr. was regularly exposed to PFAS through drinking water at residences in Fort Irwin, California; Marine Corps Exchange, Twentynine Palms, California; and Los Angeles, California.

191.     On or about February 17, 2025, Plaintiff Ronald Dodge, Jr. was diagnosed with clear cell renal carcinoma in Canton, Georgia and subsequently underwent related treatment.

192.     Plaintiff Shawn Warner is a citizen and resident of Lawrenceville, Georgia. From approximately 1971 to 2012, Plaintiff Shawn Warner was regularly exposed to PFAS through drinking water at multiple residences in Chico, California; Durham, North Carolina; and Sudley, Virginia.

193.     On or about 2023, Plaintiff Shawn Warner was diagnosed with kidney cancer in Lawrenceville, Georgia and subsequently underwent a partial nephrectomy performed on or about April 2023 at Northside Hospital in Atlanta, Georgia.

**B.  Defendants**

194.     Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products to which Plaintiffs were exposed.

195.     **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

196.     3M is the only company that manufactured and/or sold AFFF containing PFOS.

197.     **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is

a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

198.    **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

199.    **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

200.    **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

201.    **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

202.    **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

203.    **CHEMDESIGN:** Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

204.    **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

205.    **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York

corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

206.    **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

207.    **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont.

208.    Upon information and belief, Corteva was originally formed in February 2018 as a wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

209.    Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc., DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon information and belief, New DuPont retained assets in the specialty products business lines, as well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

210.    **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

211.    **DUPONT:** Defendant E. I. Du Pont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

212.    **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.

213.     In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

214.     **CHEMOURS FC:** Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company that conducts business throughout the United States. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

215.     **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

216.     Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

217.     Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

218.     Upon information and belief, Defendant John Does 1-49 were manufacturers and/or sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time the Plaintiffs will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

219.     All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business

1   in the State of California.

2       220.   Any and all references to a Defendant or Defendants in this Complaint include any

3   predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

4       221.   The term "Defendants," without naming any specific one, refers to all Defendants

5   named in this Complaint jointly and severally. When reference is made to any act or omission of

6   the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or

7   representatives of the Defendants committed or authorized such act or omission, or failed to

8   adequately supervise or properly control or direct their employees while engaged in the

9   management, direction, operation or control of the affairs of Defendants, and did so while acting

10   within the scope of their employment or agency.

11                **III.    JURISDICTION & VENUE**

12       222.   This Court has jurisdiction pursuant to Cal. Const. art. VI, § 10.

13       223.   This Court may exercise personal jurisdiction over Defendants because, based on

14   information and belief, each is a corporation or other business that has sufficient minimum contacts

15   in California, or otherwise intentionally avails itself of the California market either through the

16   distribution or sale of products containing PFAS in the State of California or by having a

17   manufacturing, distribution or other facility located in California so as to render the exercise of

18   jurisdiction over it by the California courts consistent with traditional notions of fair play and

19   substantial justice.

20       224.   Venue is appropriate in this county pursuant to Cal. Code Civ. Proc. §395 as facts

21   giving rise to the Plaintiff's injury occurred in this County.

22                **IV.    FACTUAL ALLEGATIONS**

23   **A.  The PFAS Contaminants at Issue: PFOA and PFOS**

24       225.   Both PFOA and PFOS fall within a class of chemical compounds known as

25   perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as

26   per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in

27   which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon

28   atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical

bonds that occur in nature.

226.    PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

227.    PFOA and PFOS are stable, man-made chemicals. They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

228.    Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

229.    Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

230.    Notably, from the time these two compounds were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS. According to EPA, PFOA and PFOS are associated with high cholesterol, thyroid disorders, pregnancy-induced hypertension, preeclampsia, reproductive, developmental, and systemic effects, and cancers.[3]

231.    The EPA has warned that there is suggestive evidence of the carcinogenic potential

---

[1] EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS),* Document No. EPA 822-R-16-002 (May 2016), available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025); EPA, *Health Effects Support Document for Perfluorooctanoic Acid (PFOA),* available at https://www.epa.gov/sites/default/files/2016-05/documents/pfoa_hesd_final-plain.pdf (last accessed March 11, 2025).

[2] *See* notes 1, 2, *supra. See also* EPA, Technical *Fact Sheet – Perfluorooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA),* available at https://www.regulations.gov/document/EPA-HQ-TRI-2022-0270-0009 (last accessed March 11, 2025).

[3] *Id.*

1 for PFOA and PFOS in humans.[4]

2      232.    EPA continues to research the effects of PFAS.  In June 2022, after evaluating over

3 400 studies published since 2016 and applying human health risk assessment approaches, tools,

4 and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS

5 exposure at which negative outcomes could occur are much lower than previously understood

6 when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt).  EPA

7 therefore announced new Interim Updated Health Advisory levels for PFOA of 0.004 ppt and 0.02

8 ppt for PFOS.[5]

9      233.    In April, 2024, EPA established legally enforceable levels, called Maximum

10 Contaminant Levels (MCLs), for six PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, and

11 HFPO-DA as contaminants with individual MCLs, and PFAS mixtures containing at least two or

12 more of PFHxS, PFNA, HFPO-DA, and PFBS using a Hazard Index MCL to account for the

13 combined and co-occurring levels of these PFAS in drinking water. EPA also finalized health-

14 based, non-enforceable Maximum Contaminant Level Goals (MCLGs) for these PFAS.  The

15 MCLs for PFOA and PFOS are each 4 parts per trillion ("ppt").[6]

16    **B.  Aqueous Film-Forming Foam (AFFF) Contained PFOS and/or PFOA at Relevant**

17        **Times**

18      234.    Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first

19 developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

20      235.    Generally, AFFF is used to extinguish fires, particularly fires that involve

21 petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then

22 works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing

23 combustion.

24

25 [4] See EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025).

26 [5] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, Document Number 822-F-22-002, available at

27 https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed March 11, 2025).

28 [6] EPA, Per- and *Polyfluoroalkyl Substances (PFAS), Final PFAS National Primary Drinking Water Regulation*, available at https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (last accessed March 11 2025).

236.   The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

237.   When used as the Defendants intended and directed, AFFF causes PFOA, PFOS, and/or other PFAS compounds to enter the body of those handling, using, or otherwise exposed to the foam (including firefighters).  When using AFFF, firefighters may absorb PFOA and PFOS through their skin, inhale PFOA and PFOS compounds, or inadvertently ingest PFOA and PFOS compounds. Additionally, when used as the Defendants intended and directed, AFFF causes PFOA and PFOS to seep into groundwater, and thus, drinking water supplies in the areas in which it is used. Once in the water supply, PFOA and PFOS can travel long distances from where the AFFF was used. This has resulted in widespread contamination of drinking water supplies with PFOA and PFOS nationwide.

238.   Notably, AFFF can be made without PFOA and PFOS.  Unlike AFFF made with PFOA or PFOS, fluorine-free foams do not pose a significant health risk to individuals.

239.   Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to Plaintiffs' injuries.

C.   **Defendants' Knowledge of PFOA and PFOS Hazards**

240.   On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when AFFF is used per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

241.   At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and

1    gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous

2    system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that

3    cause genetic damage.

4        242.    For instance, in 1980, 3M published data in peer reviewed literature showing that

5    humans retain PFOA in their bodies for years. Based on that data, 3M estimated that it could take

6    a person up to 1.5 years to clear just half of the accumulated PFOA from their body after all

7    exposures had ceased.[7]

8        243.    By the early 1980s, the industry suspected a correlation between PFOA exposure

9    and human health effects. Specifically, manufacturers observed bioaccumulation of PFOA in

10   workers' bodies and birth defects in children of workers.

11       244.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers

12   in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed

13   workers, finding two of seven children born to female plant workers between 1979 and 1981 had

14   birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

15       245.    Beginning in 1983, 3M documented a trend of increasing levels of PFOA in the

16   bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this

17   present trend with serious concern. It is certainly possible that [...] exposure opportunities are

18   providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

19       246.    Based on information and belief, in 2000, under pressure from the EPA, 3M

20   announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF

21   production did not fully phase out until 2002.   The company stopped producing PFOA at

22

23   [7] *See* Ubel, F.A., Sorenson, S.D., and Roach, D.E., *Health status of plant workers exposed to fluorochemicals - a
     preliminary report.*  Journal Am. Ind Hyg. Assoc. J 41:584-89 (1980).

24

25   [8] *See* DuPont, *C-8 Blood Sampling Results,* available at
     https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21G

26   C49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.26293428.885409355.16835878
     69-581783177.1682689989 (last accessed March 11, 2025).

27   [9] *See* 3M, Internal Memorandum, *Organic Fluorine Levels,* (August 31, 1984), Office of Minnesota Attorney
     General, Exhibit List, No. 1313,-available at https://www.ag.state.mn.us/Office/Cases/3M/StatesExhibits.asp (last

28   accessed March 11, 2025).

1    approximately the same time.

2        247.    From 1951, DuPont, and on information and belief, Chemours, designed,

3    manufactured, marketed and sold Fluorosurfactant Products, including Teflon nonstick cookware,

4    and more recently PFAS feedstocks such as Forafac 1157 N, for use in the manufacturing of AFFF

5    products.

6        248.    On information and belief, by no later than 2001 Old DuPont manufactured,

7    produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of

8    the AFFF product manufacturers for use in their AFFF products that were discharged into the

9    environment and harmed Plaintiffs.

10        249.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s

11    and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose

12    to the public or to government regulators what they knew about the substance's potential effects

13    on humans, animals, or the environment.10

14        250.    By December 2005, the EPA uncovered evidence that DuPont concealed the

15    environmental and health effects of PFOA, and the EPA announced the "Largest Environmental

16    Administrative Penalty in Agency History." The EPA fined DuPont $16,500,000 for violating the

17    Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA

18    substantial risk information about chemicals they manufacture, process or distribute in

19    commerce."11

20        251.    By July 2011, DuPont could no longer credibly dispute the human toxicity of

21    PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the

22    settlement of a class action over DuPont's releases from the Washington Works plant had reviewed

23    the available scientific evidence and notified DuPont of a "probable link"12 between PFOA

24

25    _____

    10 EPA, Consent Agreement and Final Order, *In re E.I. DuPont de Nemours & Co.*, TSCA Docket TSCA-HQ-2004-

26    0016 (Dec. 14, 2005), available at
    https://www.epa.gov/sites/default/files/documents/dupontpfoasettlement121405.pdf (last accessed March 11, 2025).

27    11 *Id.*

28    12 Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not
    that among class members a connection exists between PFOA/C8 exposure and a particular human disease. *See* C8

1    exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and

2    preeclampsia.13  By October 2012, the C8 Science Panel had notified DuPont of a probable link

3    between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease,

4    testicular cancer, and ulcerative colitis.

5         252.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a

6    new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped

7    its perfluorinated chemical liabilities into the lap of the new Chemours.

8         253.    Defendants also knew or should have known that: (a) users of AFFF would likely

9    include fire and rescue training organizations and their personnel; (b) fire and rescue personnel

10   were foreseeable users of AFFF containing or degrading into PFOA and/or PFOS in both training

11   and real-life fire emergency scenarios; (c) PFOA and PFOS are dangerous to human health when

12   used by fire and rescue personnel; (d) fire and rescue personnel foreseeably lacked knowledge of

13   these dangers; and, (e) fire and rescue personnel would require warnings of these dangers and/or

14   affirmative instructions in the use of AFFF.

15        254.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1)

16   designed, manufactured, marketed, purchased, supplied, and/or sold PFOA/PFOS; (2) issued

17   instructions on how AFFF should be used and disposed of; (3) failed to recall and/or warn the

18   users of AFFF of the dangers to human health that result from the standard use and disposal of

19   these products; negligently designed products containing or degrading into PFOA and/or PFOS;

20   and (5) further failed and refused to issue the appropriate warnings and/or recalls to the users of

21   AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity

22   of the purchasers of the PFOA/PFOS.

23        255.    Further, Defendants failed to disclose to environmental regulators and the general

24   public the likely existence of and health risks to the public caused by widespread PFOA and PFOS

25   _____

26   Panel, *C8 Probable Link Reports*, available at http://www.c8sciencepanel.org/prob_link.html (last accessed March 11, 2025).

27   13  *See* C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), available at

28   http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf  (last accessed March 11, 2025).

1    contamination in drinking water supplies across the country as a result of AFFF usage.

2    256.    As a direct result of Defendants' acts alleged in this Complaint, Plaintiffs suffered

3    severe health effects caused by exposure to AFFF containing PFOA and/or PFOS. As a direct and

4    proximate result, Plaintiffs incurred substantial harm, both economic and non-economic.

5    257.    Defendants had a duty and breached their duty to evaluate and test such products

6    adequately and thoroughly to determine their potential human health impacts before they sold such

7    products. They also had a duty and breached their duty to minimize the risk of harm to human

8    health caused by PFOA and PFOS.

9    **D.   The Impact of PFOA and PFOS on the Plaintiffs**

10    258.    Plaintiffs have been significantly and continuously exposed to PFOA and PFOS

11    over many years as a result of Defendants' conduct.

12    259.    Plaintiffs have been diagnosed with the serious injuries set forth above, including

13    kidney cancer, testicular cancer, thyroid disease, and ulcerative colitis.

14    260.    Plaintiffs' injuries were caused by Defendants' Fluorosurfactant Products.

15    261.    The use of Fluorosurfactant Products as directed and intended by the manufacturers

16    caused Plaintiffs' exposure to PFOA and PFOS, which caused Plaintiffs' injuries.

17    262.    Therefore, as a direct and proximate result of Defendants' tortious conduct as set

18    forth in this complaint, Plaintiffs were damaged in the following ways:

19        a.    Plaintiffs suffered physical pain and mental anguish;

20        b.    Plaintiffs incurred hospital, medical, pharmaceutical and other expenses;

21            and

22        c.    Plaintiffs experienced undue stress related to their diagnoses, medical

23            conditions, and uncertainty about their prognosis.

24

25    **FIRST CAUSE OF ACTION**

26    **STRICT LIABILITY – DESIGN DEFECT – CONSUMER EXPECTATION TEST**

27    263.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

28    264.    Plaintiffs were harmed by Fluorosurfactant Products which were designed,

1    manufactured, marketed, sold and/or distributed by Defendants, and which were defectively

2    designed, did not include sufficient instructions, and did not include sufficient warning of potential

3    safety hazards of human exposure.

4         265.    Defendants' Fluorosurfactant Products did not perform as safely as an ordinary

5    consumer would have expected them to perform when used or misused in an intended or

6    reasonably foreseeable way.

7         266.    Defendants represented, asserted, claimed and/or warranted that their

8    Fluorosurfactant Products could be used in conformity with accompanying instructions and labels

9    in a manner that would not cause injury or damage.

10        267.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers,

11   and marketers of Fluorosurfactant Products, Defendants owed a duty to all persons whom

12   Defendants' products might foreseeably harm, including Plaintiffs, not to manufacture, sell, or

13   market any product which is unreasonably dangerous for its intended and foreseeable uses.

14        268.    Defendants' Fluorosurfactant Products were used by or near Plaintiffs in a

15   reasonably foreseeable manner and without substantial change in the condition in which the

16   products were sold.

17        269.    Defendants knew, or should have known, that use of Defendants' Fluorosurfactant

18   Products in their intended manner would result in exposure of humans to PFOA and/or PFOS and

19   to resulting injury.

20        270.    Furthermore, Defendants knew, or should have known, that their Fluorosurfactant

21   Products were toxic and associated with medical conditions in humans.

22        271.    Plaintiffs were, are and will continue to be harmed by Defendants' defectively

23   designed Fluorosurfactant Products.

24        272.    Defendants' Fluorosurfactant Products' failure to perform safely was a substantial

25   factor in causing Plaintiffs' harm.

26        273.    As a direct and proximate result of Defendants' unreasonably dangerous design,

27   manufacture, and sale of PFAS-containing products and/or AFFF, Plaintiffs suffered personal

28   injuries as discussed throughout this Complaint.

274.    Defendants knew that it was substantially certain that their acts and omissions described above would threaten the health of users like Plaintiffs. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiffs' health.

## SECOND CAUSE OF ACTION

### STRICT LIABILITY – DESIGN DEFECT – RISK BENEFIT TEST

275.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

276.    Plaintiffs were harmed by Fluorosurfactant Products designed, manufactured, marketed, sold and/or distributed by Defendants.

277.    Plaintiffs were, are, and will continue to be harmed by Defendants' defectively designed Fluorosurfactant Products.

278.    The design of Defendants' Fluorosurfactant Products was a substantial factor in causing harm to Plaintiffs.

279.    The gravity of the harm to Plaintiffs resulting from Defendants' Fluorosurfactant Products outweighs the benefits of the Products' design.

280.    The likelihood that PFAS-containing products and/or AFFF would cause injuries to Plaintiffs far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

281.    At the time of manufacture, there were safer alternative designs that were feasible, cost effective, and advantageous, including not using PFOS, PFOA and/or their precursor chemicals in products.

282.    Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to individuals, and thus Defendants were grossly negligent.

283.    As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing products and/or AFFF, Plaintiffs suffered personal injuries as discussed throughout this Complaint.

284.   Defendants knew that it was substantially certain that their acts and omissions described above would threaten the health of users and the public, including Plaintiffs. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiffs' health.

### THIRD CAUSE OF ACTION

### STRICT LIABILITY – FAILURE TO WARN

285.   Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

286.   PFAS-containing products and/or AFFF are unreasonably dangerous for their reasonably anticipated uses such that a risk of harm is inherent for the following reasons:

a.   Users of AFFF are exposed to PFOA and PFOS when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

b.   PFOA and PFOS are likely to infiltrate the water supply when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

c.   PFOA and PFOS exposure may cause diseases and cancers like Plaintiffs;

d.   PFOA and/or PFOS persist and bioaccumulate in the human body; and

e.   PFOA and/or PFOS pose significant threats to human and environmental health.

287.   As manufacturers, distributors, suppliers, sellers, and marketers of Fluorosurfactant Products, Defendants had a duty to issue warnings to consumers, users, and foreseeable bystanders, including Plaintiffs, of the risks posed by exposure to PFAS (including PFOA and PFOS).

288.   Defendants knew that their Fluorosurfactant Products would be purchased, transported, stored, handled, and used without notice of the hazards that PFOA and PFOS pose to human health.

289.   Defendants breached their duty to warn by unreasonably failing to provide Plaintiffs, public officials, purchasers, downstream handlers, and/or the general public with warnings about the potential and/or actual contamination of the environment by PFOA and PFOS, despite Defendants' knowledge that PFOA and PFOS were real and potential threats to the

1    environment.

2        290.    At all relevant times, including the time AFFF products were marketed, Defendants

3    knew of or should have reasonably foreseen the human health risks associated with PFAS-

4    containing products and/or AFFF, and Defendants failed to provide a warning that would lead an

5    ordinary reasonable user or handler of a product to contemplate the dangers associated with PFAS-

6    containing products and/or or an instruction that would have prevented the harm to Plaintiffs.

7        291.    Plaintiffs were exposed to PFAS-containing AFFF either directly or through their

8    drinking water supply.

9        292.    At the time and place of Plaintiffs' exposure, Defendants' Fluorosurfactant

10    Products were used in a reasonably foreseeable manner and without substantial changes in the

11    condition in which the products were sold.

12        293.    Although Defendants were aware of the dangers posed by AFFF and

13    Fluorosurfactant Products, the dangers were unknown and not foreseeable to Plaintiffs.

14        294.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs suffered

15    personal injuries and costs and damages resulting therefrom.

16        295.    The Defendants' failure to warn constitutes a causative nexus in Plaintiffs' injuries.

17        296.    Defendants knew that it was substantially certain that its acts and omissions

18    described above would threaten the health of users like Plaintiff.  Defendants committed each of

19    the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or

20    malice, and with conscious and/or reckless disregard for the health and safety of others and for the

21    Plaintiffs' health.

22                    **FOURTH CAUSE OF ACTION**

23            **NEGLIGENCE – MANUFACTURER OR SUPPLIER – DUTY TO WARN**

24        297.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

25        298.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers,

26    shippers, and/or handlers of Fluorosurfactant Products, Defendants owed a duty to Plaintiffs, as

27    well as to all persons whom Defendants' Fluorosurfactant Products might foreseeably harm, to

28    exercise due care in the instructing, labeling, and warning of the handling, control, use, and

1    disposal of Defendants' Fluorosurfactant Products.

2        299.   Despite the fact that Defendants knew that PFOA and PFOS are toxic and present

3 significant risks to human health, Defendants negligently: (a) designed, manufactured, formulated,

4 handled, labeled, instructed, controlled, marketed, promoted, and/or sold Fluorosurfactant

5 Products; (b) issued instructions on how Fluorosurfactant Products should be used and disposed

6 of, thus improperly permitting Plaintiffs' exposure to PFOA and/or PFOS; (c) failed to warn the

7 users of Fluorosurfactant Products of the dangers of exposure inherent in the use of these products;

8 and (d) failed and refused to issue the appropriate warnings to the users of Fluorosurfactant

9 Products regarding the proper use and disposal of these products, notwithstanding the fact that

10 Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of

11 their Fluorosurfactant Products.

12        300.   A reasonable manufacturer, seller, or distributor, under the same or similar

13 circumstances would have warned of the danger or instructed on the safe use of Fluorosurfactant

14 Products.

15        301.   Plaintiffs were, are, and will continue to be harmed.

16        302.   Defendants' failure to warn or instruct was a substantial factor in causing Plaintiffs'

17 harm.

18        303.   Defendants' conduct lacked any care and was an extreme departure from what a

19 reasonably careful company would do in the same situation to prevent harm to others and the

20 environment, and thus Defendants were grossly negligent.

21        304.   As a direct and proximate result of Defendants' above-described acts and

22 omissions, Plaintiffs have incurred, continue to incur, and/or will incur costs and damages related

23 to the PFAS contamination of their Property, including but not limited to the investigation,

24 monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination,

25 operating, maintenance and consulting costs, legal fees, and diminished property value.

26        305.   Although Defendants were aware of the dangers posed by AFFF and

27 Fluorosurfactant Products, the dangers were unknown and not foreseeable to Plaintiffs.

28        306.   As a direct and proximate result of Defendants' failure to warn, Plaintiffs suffered

1   personal injuries and costs and damages resulting therefrom.

2       307.   The Defendants' failure to warn constitutes a causative nexus in Plaintiffs' injuries.

3       308.   Defendants knew that it was substantially certain that its acts and omissions

4   described above would threaten the health of users and bystanders, including Plaintiffs.

5   Defendants committed each of the above-described acts and omissions knowingly, willfully,

6   and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the

7   health and safety of others and for the Plaintiffs' health.

8   **FIFTH CAUSE OF ACTION**

9   **NEGLIGENCE – FAILURE TO RECALL**

10       309.   Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

11       310.   Defendants' Fluorosurfactant Products were designed, manufactured, marketed,

12   distributed and sold without adequate warning of toxicity and potential human health risks.

13       311.   Defendants were negligent by not using reasonable care to warn or instruct about

14   the risks associated with their Fluorosurfactant Products.

15       312.   Defendants knew or reasonably should have known that their Fluorosurfactant

16   Products were dangerous or likely to be dangerous when used or misused in a reasonably

17   foreseeable manner.

18       313.   Defendants knew or reasonably should have known that users and third parties

19   would not realize the dangers.

20       314.   Defendants became aware of the human health risks presented by their

21   Fluorosurfactant Products by no later than the year 2000.

22       315.   Defendants failed to recall their Fluorosurfactant Products.

23       316.   A reasonable manufacturer, seller, or distributor, under the same or similar

24   circumstances would have warned of the dangers or instructed on the safe use of Fluorosurfactant

25   Products.

26       317.   Plaintiffs were, are, and will continue to be harmed.

27       318.   Defendants' failure to recall their Fluorosurfactant Products was a substantial factor

28   in causing Plaintiffs' harm.

319.    Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

320.    Although Defendants were aware of the dangers posed by AFFF products, the dangers were unknown and not foreseeable to Plaintiffs.

321.    As a direct and proximate result of Defendants' failure to recall, Plaintiffs suffered personal injuries and costs and damages resulting therefrom.

322.    The Defendants' failure to recall constitutes a causative nexus in Plaintiffs' injuries.

323.    Defendants knew that it was substantially certain that their acts and omissions described above would threaten the health of users and the general public, including Plaintiffs. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others and for the Plaintiffs' health.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE UNIFORM VOIDABLE TRANSFER ACT

324.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

325.    Plaintiffs seek equitable and other relief pursuant to the Uniform Fraudulent Transfer Act ("UVTA") as adopted by the State of California in Cal. Civ. Code Ann. § 3439, against E. I. Dupont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and DuPont De Nemours, Inc. (collectively, the "UVTA Defendants").

326.    Pursuant to Cal. Civ. Code Ann. § 3439, "[a] transfer made or an obligation incurred by a debtor is voidable as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

a.    With actual intent to hinder, delay, or defraud any creditor of the debtor;

b.    Without receiving a reasonably equivalent value in exchange for the transfer or obligation of the debtor either:

A. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

B. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

327. Further, Cal. Civ. Code Ann. § 3439 states that, "[i]n determining the actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any and all of the following: to all relevant factors including, but not limited to, the following: […] whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, whether the transfer was of substantially all of the debtor's assets; […] whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred."

328. Upon information and belief, in February 2014, E. I. DuPont de Nemours and Company formed The Chemours Company as a wholly owned subsidiary and used it to spin off DuPont's "Performance Chemicals" business line in July 2015.

329. Upon information and belief, at the time of the spinoff, DuPont's Performance Chemicals division contained the AFFF and/or PFAS business segments. In addition to the transfer of the Performance Chemicals division, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFAS.

330. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

331. Upon information and belief, as a result of the transfer of assets and liabilities described in this Complaint, DuPont limited the availability of assets to cover judgements for all of the liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

332.     Upon information and belief, the UTVA Defendants acted (a) with intent to hinder, delay and defraud parties, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) were engaged or were about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that The Chemours Company would incur, debts beyond its ability to pay as they became due.

333.     The UVTA Defendants engaged in acts in furtherance of a scheme to transfer E. I. DuPont de Nemours and Company's assets out of the reach of parties, such as the Plaintiffs, that have been damaged as a result of UVTA Defendants' conduct, omissions, and actions as described in this Complaint.

334.     As a result of the transfer of assets and liabilities described in this Complaint, the UVTA Defendants have attempted to limit the availability of assets to cover judgments for all of the liability for damages and injuries from the manufacturing, marketing, distribution and/or sale of Fluorosurfactant Products.

335.     Pursuant to Cal. Civ. Code Ann. § 3439.07, Plaintiffs seek to avoid the transfer of E.I. DuPont de Nemours and Company's liabilities for the claims brought in this Complaint and to hold the UVTA Defendants liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

336.     Plaintiffs further seek all other rights and remedies that may be available to them under UVTA, including prejudgment remedies as available under applicable law, as may be necessary to fully compensate Plaintiffs for the damages and injuries they have suffered as alleged in this Complaint.

### SEVENTH CAUSE OF ACTION

### CIVIL CONSPIRACY

337.     Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

338.     At all times relevant herein, Defendants actually knew of the hazards that PFOS and/or PFOA posed to the health of those exposed to these compounds.

339.     Beginning in the 1960s and continuing through the date of the filing of this

Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to the Plaintiffs. Each Defendant performed at least one overt act in furtherance of this conspiracy. Specifically, Defendants colluded for the avowed purpose of providing information about Fluorosurfactant Products to the public and the government, with the true, unlawful purposes of:

    a.  intentionally misrepresenting to the EPA and the public that their Fluorosurfactant Products were safe and did not pose a risk to human health and the environment;

    b.  concealing the dangers of their Fluorosurfactant Products, including the products' characteristics and their propensity to contaminate soil and groundwater, from the government and public by, among other means, repeatedly misrepresenting how Fluorosurfactant Products were being disposed of;

    c.  concealing the dangers of PFOA and/or PFOS from consumers and the public; and

    d.  using their considerable resources to fight legislation concerning PFOA and/or PFOS.

340.   As a direct and proximate result of Defendants' conspiracy, Defendants' Fluorosurfactant Products at all times relevant to this litigation have:

    a.  Caused physical and emotional injuries to Plaintiffs;

    b.  Caused Plaintiffs to incur, *inter alia*, medical and treatment costs; non-economic damages; loss of earnings and future earnings; and household expenses; and

    c.  required and will continue to require monitoring of Plaintiffs' physical condition.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

341.   Plaintiffs hereby incorporate by reference the allegations contained within the preceding paragraphs of this Complaint as if restated in full herein.

### **Discovery Rule Tolling**

342.   Plaintiffs did not know, nor could they have reasonably discovered by the exercise of reasonable diligence, that exposure to fluorochemical products, including AFFF, PFOA, and PFOS was harmful to human health. The risks of said chemicals and AFFF were not obvious to the users of AFFF, nor were they obvious to individuals such as Plaintiffs in the vicinity of AFFF

use. Since Plaintiffs could not have reasonably discovered the defects and risks associated with the use of fluorochemical products, they could not protect themselves from exposure to Defendants' fluorochemical products. For this reason, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

343.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF, PFOA, PFOS, and other fluorochemical products is harmful to human health within the time period allowed by any applicable statute of limitations.

344.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to human health within the time period allowed by any applicable statute of limitations.

345.    During the relevant times, Plaintiffs did not possess specialized scientific or medical knowledge. Plaintiffs did not, and could not, have discovered or known facts that could cause a reasonable person to suspect the risk associated with the use of Defendants' fluorochemical products. Further, a reasonable and diligent investigation by Plaintiffs earlier would not have disclosed that AFFF could cause personal injury.

346.    Wherefore, all applicable statutes of limitations pertaining to Plaintiffs' claims have been tolled by operation of the discovery rule.

### **Fraudulent Concealment**

347.    Rather than disclose critical safety and health information regarding its AFFF and fluorochemical products, Defendants have consistently and falsely represented the safety of AFFF products.

348.    This fraudulent concealment continues to the present day.

349.    Wherefore, due to Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein through the relevant time for this action, all applicable statutes

1  of limitations have also been tolled.

2  <u>**Estoppel**</u>

3       350.   Defendants were under a continuous duty to consumers, end users, and other

4  persons, such as Plaintiffs, coming into contact with their fluorochemical products, to provide

5  truthful and reliable safety information concerning their products and the risks associated with

6  their use, as well as exposure to AFFF.

7       351.   Rather than fulfill this duty, Defendants knowingly, affirmatively, and actively

8  concealed important safety information and warnings concerning AFFF and the health risks

9  associated with the same.

10      352.   Wherefore, Defendants are estopped from relying on any statute of limitations in

11 defense of this action.

12  <u>**PUNITIVE DAMAGES**</u>

13      353.   Under the applicable laws of the State of California, Plaintiffs seek punitive

14 damages due to the wanton and willful acts and/or omissions of Defendants as set forth and alleged

15 throughout this Complaint.

16  <u>**PRAYER FOR RELIEF**</u>

17      354.   Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

18           a.    Compensatory damages and all other special damages according to proof

19                 including, but not limited to past and future medical and treatment costs;

20                 non-economic damages; loss of earnings and future earnings; and

21                 household expenses, among others;

22           b.    Avoiding the transfer of DuPont's liabilities for the claims brought in this

23                 Complaint;

24           c.    Exemplary and Punitive damages;

25           d.    Consequential damages;

26           e.    Pre-judgment and post-judgment interest;

27           f.    Attorney's fees; and

28           g.    Any other and further relief as the Court deems just, proper, and equitable.

1

## **JURY TRIAL DEMANDED**

2          Each Plaintiff hereby demands a trial by a jury on all of the triable issues of this

3    complaint. Plaintiffs do not seek to have their claims tried jointly.

4    Dated: June 17, 2025

5

6                                              */s/ David Fernandes*
                                              David Fernandes (SBN 280944)
7                                              **BARON & BUDD, P.C.**
                                              Holly Werkema (TX Bar No. 24081202)
8                                              *(Pro Hac Vice Forthcoming)*
                                              hwerkema@baronbudd.com
9                                              3102 Oak Lawn Avenue, Suite 1100
                                              Dallas, TX 75219
10                                             Tel.: (214) 521-3605
                                              Fax: (214) 279-9915
11                                             Email: dfernandes@baronbudd.com

12
                                              **COSSICH, SUMICH, PARSIOLA**
13                                             **& TAYLOR, LLC**
                                              Philip F. Cossich, Jr. (LA Bar No. 1788)
14                                             *(Pro Hac Vice Forthcoming)*
                                              pcossich@cossichlaw.com
15                                             Christina M. Cossich (LA Bar No. 32407)
                                              *(Pro Hac Vice Forthcoming)*
16                                             ccossich@cossichlaw.com
                                              8397 Highway 23, Suite 100
17                                             Belle Chasse, LA 70037
                                              Telephone: (504) 394-9000
18

19                                             *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28